IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DAVID E. BURNS,

                    Plaintiff,

        v.

BOROUGH OF GLASSBORO <u>et</u> <u>al.</u>

                    Defendants.

HON. JEROME B. SIMANDLE

Civil No. 05-3034 (JBS)

**OPINION**

APPEARANCES:

Katherine D. Hartman, Esq.
ATTORNEYS HARTMAN, CHARTERED
505 S. Lenola Road, Suite 121
Moorestown, NJ 08057-1590
        Attorney for Plaintiff David E. Burns

A. Michael Barker, Esq.
BARKER & SCOTT, P.C.
Linwood Greene
210 New Road, Suite 12
Linwood, NJ 08221
        Attorney for Defendants Borough of Glassboro and Chief of
        Police Alex Fanfarillo

**SIMANDLE**, District Judge:

        This matter is before the Court upon the motion of

Defendants Borough of Glassboro and Chief of Police Alex

Fanfarillo for summary judgment.  This case involves claims made

by Plaintiff David E. Burns that, while he was employed as a

police officer with the Glassboro Police Department, Defendants

violated Burns' First Amendment rights and the New Jersey Law

Against Discrimination.  Specifically, Burns alleges that Chief

Fanfarillo retaliated against him for reporting to the Glassboro

Police Department's internal affairs unit certain derogatory and sexually harassing statements made by Chief Fanfarillo.

　　　For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion for summary judgment. The Court will grant Defendants' motion with respect to Burns' First Amendment claim and this claim will be dismissed. The Court will deny Defendants' motion for summary judgment with respect to Burns' claim under the New Jersey Law Against Discrimination, however, because genuine issues of material fact exists as to this claim.

I.　　**BACKGROUND**

　　A.　　**The Events of February 2003 through April 2003**

　　　On February 18, 2003, several members of the Glassboro Police Department were eating lunch in the break room of the Borough of Glassboro's police station. Included in the group of officers was the plaintiff, Officer David Burns ("Burns"), the defendant, Chief of Police Alex Fanfarillo ("Fanfarillo"), and several other police officers.[1] During lunch, a female civilian employee left the break room to get a knife to cut a sandwich. (Internal Affairs Investigation Memo. from Lt. Reed Layton to Chief Patricia Kunchynski, dated 3/10/03). As the female employee walked away, Fanfarillo made a derogatory comment about

_____

　　　[1] At the time of the incident, Fanfarillo was a captain in the Glassboro Police Department. Also present were Officers Jack Manning, James Jones, Michael Bozarth and Daniel Eliasen.

2

the size of the female employee's buttocks and used his hands to demonstrate her buttocks' width.  (Id.)  When the female employee returned with the knife and cut the sandwich, Fanfarillo allegedly asked her to cut the sandwich again so that he could "watch them jiggle again" referring to the employee's breasts. Next, referring to a television program playing in the break room, Fanfarillo allegedly made a derogatory comment about a female television commentator who was speaking about dynamite, stating that he "would stick a piece of dynamite up [his] ass to have that girl."  (Id.)

At the time of the comment, Burns was in the break room with another police officer that Burns was charged with training. (Id.)  Because he had just completed reviewing the Glassboro Police Department's sexual harassment policy with the officer-in-training days before, Burns was particularly embarrassed by Fanfarillo's comments.  (Id.)  According to the internal affairs investigation report, none of the other officers present nor the female employee either heard Fanfarillo's comments or were able to provide specific details about the comments he made.  (Id.) After the incident, however, Burns spoke with his sergeant about the incident and gave a taped statement regarding what he observed and recounted everything that he observed to internal affairs investigators.  (Id.)

3

An investigation into the incident and Fanfarillo's conduct ensued.  On February 25, 2003, while the investigation was ongoing, Fanfarillo was appointed Deputy Chief of Police.  In a March 17, 2003 letter to then Deputy Chief Fanfarillo, Chief Patricia Kunchynski, after reviewing the internal affairs report regarding the incident, sustained the finding of sexual harassment on the part of Fanfarillo.  (Ltr. to Fanfarillo from Chief Kunchynski, dated 3/17/03).  Chief Kunchynski also sustained the finding that several officers were reluctant to report the incident, fearing retaliation by Fanfarillo.  (Id.) In the letter, Chief Kunchynski summarized the rules and regulations Fanfarillo violated when he made the derogatory comments and imposed disciplinary action including a six-month suspension, a demotion to a non-supervising rank and required attendance of a sexual harassment training course.  (Id.) Fanfarillo ultimately agreed to forfeit ten days of his compensatory time as punishment for the incident, but was not suspended, demoted or required to attend sexual harassment training.  (Dep. Tr. of Alexander Fanfarillo at 23, 29-30.)

### B.   Fanfarillo's Access to His Internal Affairs File

Rather than being demoted after the February 2003 incident, Fanfarillo was promoted to acting chief of police in April of 2003.  (Id. at 23.)  Within a few weeks of being promoted, Fanfarillo set out to collect all of the internal affairs files

and store them in a central location.  (Id. at 36-37, 39.)  To
this end, Fanfarillo collected internal affairs files from four
different storage areas and stored them in a "central file" in
his office.  (Id. at 37.)  The files were locked and Fanfarillo
and his secretary possessed the only keys.  (Id. at 38.)  This
account was confirmed by Captain Franklin Brown, a police officer
who assisted with internal affairs, as Brown testified that he
transferred all open internal affairs files to Fanfarillo's
office.  (Deposition Tr. of Franklin Brown at 23-24, 28-30.)
Fanfarillo testified, however, that he never saw the internal
affairs file report related to the February 2003 incident.
(Fanfarillo Dep. Tr. at 42-43.)

     The issue of whether Fanfarillo had access to his internal
affairs file is further complicated by several additional facts.
First, according to the testimony of Officer Joseph Brigandi (the
Glassboro Borough Administrator), Brigandi instructed his
administrative assistant, Sharon Nickels, to seal the Fanfarillo
internal affairs file and store it in a locked cabinet "in a
special area" in the Borough Administrator's office.  (Dep. Tr.
of Joseph Brigandi at 60.)  Defendants claim that Ms. Nickels
signed an affidavit stating that she stored the internal affairs
report as instructed (identified as Exhibit 10 to Defendants'
summary judgment motion papers), but no such affidavit is

presented to the Court.[2]  Second, there is evidence that there

was more than one copy of Fanfarillo's internal affairs report in

existence.  According to his deposition, Officer Reed Layton,

retired head of internal affairs, explained that he provided the

original reports to the Borough Administrator, but kept a copy of

the internal affairs report for his personal internal affairs

file.  (Deposition Transcript of Reed Layton at 20.)  Third,

there is evidence that there were multiple copies of the internal

affairs report.  Officer Joseph Brigandi recalled seeing a copy

of the report in which certain sections were redacted.

(Deposition of Joseph Brigandi at 40 ("I remember seeing

something blacked out, a name.") Brigandi did not recall any

other details of the redaction.  (Id. at 40-41.)  The copy

provided to Burns during discovery, however, was not redacted.

(Def.'s Ex. C.)[3]

    C.   **Fanfarillo's Alleged Acts of Retaliation**

    According to Burns, shortly after Fanfarillo was named

acting chief and the internal affairs files were transferred to

Fanfarillo's office, Fanfarillo stopped speaking to Burns and

---

        [2]  Exhibit 10 is the deposition transcript of Ms. Randi
Woerner.

        [3] Defendants' supplemental briefing (filed May 14, 2007)
raise additional questions regarding whether Fanfarillo had
access to his internal affairs file. (Def.'s Supp. Br. at 7-8.)
This Court will not consider any of the statements made in
Defendants' supplemental materials as they are not accompanied by
admissible evidence (e.g., an affidavit or certification).

failed to acknowledge his presence or say good morning to him
when they were in the police station together.  (Burns Dep. Tr.
at 54-56.)  According to Burns, Fanfarillo's behavior towards
Burns was much different from his behavior prior to Fanfarillo's
becoming acting chief and having access to his internal affairs
report.  (Id. at 54.)

Burn claims that Fanfarillo retaliated against him for the
comments he made to the internal affairs investigators regarding
the February 2003 incident.  One instance of retaliation involved
the elimination of Burns' ability to earn additional money
working overtime.  Burns was a member of the canine unit and he
regularly performed side "detail" using his canine to patrol
federal buildings in Philadelphia, Pennsylvania.  Under an
arrangement between the federal government and the Borough of
Glassboro, certain officers from the canine unit were detailed to
federal buildings, paid overtime, and the Borough was paid an
administrative fee to cover its costs.  Both Burns and an officer
named Butch Moore worked this detail and the detail allowed Burns
to earn significant income.  (Burns Dep. Tr. at 38-39.)
According to Burns' testimony, in the Fall of 2003, Fanfarillo
expressed concern about Burns working this additional detail and
instructed Officer Layton (the supervisor of the canine unit)
that officers could no longer work the detail because it was too
costly to the Borough of Glassboro.  Specifically, Fanfarillo

claimed that the administrative fee of fifteen percent paid from the federal government to the Borough did not adequately cover the costs incurred by the Borough.  Fanfarillo, however, never suggested raising the fee or informed the Borough's public safety committee that the fee was inadequate.  (Fanfarillo Dep. Tr. at 63.)

Several months later, Fanfarillo recommended a prohibition on any off-duty detail outside of the Borough.  (Id. at 50.) Burns claims that Fanfarillo's reasons for prohibiting such duty were pretextual because Burns and Moore were the only officer who regularly worked side detail outside of the Borough and thus were the only officers affected by the prohibition.  (Burns Dep. Tr. 44-45.)  In support of this allegation, Burns points to the fact that he heard that Fanfarillo eliminated detail outside of the Borough of Glassboro because Fanfarillo did not want Burns to make more money than him.  Fanfarillo claims that he spoke to the Borough's CFO, Josephine Myers, about the costs of the outside detail and was informed that the administrative fees paid to the Borough did not cover the Borough's entire costs.  (Fanfarillo Dep. Tr. at 58-60.)  Moreover, after recommending to the public safety committee that such detail be eliminated, the public safety committee decided to change the Glassboro Police Department policy so that there would be no more detail outside of the Borough.  (Deposition of Joseph D'Alessandro at 32-33.)

Second, Burns claims that Fanfarillo retaliated against him by effectively denying him the ability to participate in the promotional process during the Summer and Fall of 2004, when Burns was seeking a promotion to Corporal.  The promotional process at issue consisted of two steps.  Candidates were to take a written test for promotion in May of 2004 followed by an oral interview in June of 2004.  (Memo from Fanfarillo dated 5/12/2004, Def.'s Ex. 14.)  After Burns failed the written test in May, Fanfarillo refused to allow Burns to participate in the oral interview in June.  (Burns Dep. Tr. at 61-62.)  Fanfarillo took the position that a candidate had to have a passing score on the written section in order to proceed to the interview portion. (Id. at 62.)  Fanfarillo was mistaken, according to police department policy, as applicants for Corporal and Sergeant positions (as opposed to superior officers) received an oral interview regardless of their score on the written exam. (Brigandi Dep. Tr. at 63-64.)[4]

Several months later, during the next promotional process, Burns claims that Fanfarillo approached him with a clipboard for promotional sign-ups and inquired whether Burns would be signing up.  (Burns Dep. Tr. at 66.)  Burns claims that Fanfarillo's

---

[4] Although Burns admits that he would not have been promoted even if he had had an interview (due to his failing written test score), he claimed that the interview was part of his "learning process" in order to "gain knowledge for the next test."  (Burns Dep. Tr. at 71-72.)

comments were made in an intimidating manner, and indeed
intimidated him out of participating in the promotional process.
(Id. at 66-67.)  Also during the promotional process, Burns
claims that Fanfarillo asked Captain Brown and another officer to
investigate anonymous complaints that Fanfarillo had allegedly
received about Burns.  (Burns Dep. Tr. at 32-33.)  After
completing the investigation, the officers concluded that the
allegations were not corroborated.  (Id.)  According to Burns,
when the officers conveyed as much to Fanfarillo, Fanfarillo
stated that he "want[ed] Burns' ass" and suggested that each
witness be re-interviewed.  (Id.; Fanfarillo Dep. Tr. at 4-19.)

     Finally, Burns claims that Fanfarillo took other less
significant steps in retaliation.  For example, the Borough had
purchased two special shotguns and sent Burns to receive special
training to qualify to use the weapon.  (Id. at 45.)  According
to Burns, upon learning that Burns was assigned to the weapon,
Fanfarillo demanded that it be returned to the detective bureau
and locked in a weapons storage locker.  (Id. at 47.)

     **D.   Procedural History**

     On June 14, 2005, Burns filed this two-count complaint (the
"Complaint") alleging that the Borough of Glassboro and
Fanfarillo were liable for violations of (1) Burns' First
Amendment Rights (Count One) and (2) the New Jersey Law Against
Discrimination (Count Two).  On December 19, 2006, Defendants
filed this motion for summary judgment to which Burns replied on

10

February 9, 2007.  The Court heard oral argument on the motion on
May 3, 2007.  At oral argument, the Court requested supplemental
briefing from Burns which was received on May 11, 2007.  With the
Court's permission, Defendants responded to Burns' supplemental
briefing on May 14, 2007.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of
record "show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law."[5]  Fed. R. Civ. P. 56(c).  In deciding whether
there is a disputed issue of material fact, the court must view
the evidence in favor of the non-moving party by extending any
reasonable favorable inference to that party; in other words,
"the nonmoving party's evidence 'is to be believed, and all
justifiable inferences are to be drawn in [that party's] favor.'"
Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold
inquiry is whether there are "any genuine factual issues that
properly can be resolved only by a finder of fact because they

---

[5] A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  See id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  See id.

may reasonably be resolved in favor of either party."[6] <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

## III.  DISCUSSION

### A.  Violation of the First Amendment (Count One)

In Count One of the Complaint, Burns claims that Defendants violated his First Amendment rights by retaliating against him. (Compl. ¶¶ 26-28.)  Specifically, Burns claims that, in retaliation for reporting derogatory comments made by Fanfarillo, Fanfarillo took certain adverse job actions against Burns such as eliminating all outside detail work performed by Burns and interfering with his promotional process, among other things. (<u>Id.</u> ¶ 15.)

Defendants make two arguments in support of their summary judgment motion related to Burns' First Amendment claim: (1) that Burns' speech is not protected and (2) that Burns' speech regarding the February 2003 incident is not the cause of the alleged retaliatory action.  With respect to whether Burns' speech was protected, Defendants argue that because Burns' complaints regarding Fanfarillo were made pursuant to his official duties, they are not protected by the First Amendment.

---

[6]   The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Country Floors v. Gepner</u>, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

(Def.'s Br. at 20-21.)   In support of their position, Defendants cite <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951, 1960 (2006), arguing that the U.S. Supreme Court held that, when a public employee makes a statement pursuant to official duties, the employee is not speaking as a private citizen for First Amendment purposes and thus, the First Amendment does not prohibit managerial discipline of such employees for such speech.   According to Defendants, because Burns had a duty as a Glassboro police officer to report the comments made by Fanfarillo during the February 2003 incident, Burns was not speaking as a private citizen but in his capacity as a police officer when he made statements to the internal affairs investigators.   Thus, his speech was not protected by the First Amendment.   (Def.'s Br. at 23.)

Burns counters that the Supreme Court's holding in <u>Garcetti</u> does not apply here.   According to Burns, a public employee retains First Amendment protection when engaging in speech that would be made by citizens who do not work for the government. (Pl.'s Br. at 21 citing <u>Garcetti</u>, 126 S. Ct. at 1961.)   Thus, it is only the situation where there is "no relevant analogue to speech by citizens who are not government employees" that a government employee lacks First Amendment protection. 126 S. Ct. at 1961.   According to Burns, because Burns' complaint about Fanfarillo's comments could easily have been made by a citizen

who observed the incident and reported it, there is a relevant
analogue to speech by a citizen, and Burns' speech is protected
by the First Amendment.  In support of this position, Burns cites
Skrutski v. Marut, 2006 U.S. Dist. LEXIS 66024 (M.D. Pa. 2006),
in which the District Court held Garcetti inapplicable to a
situation where a state trooper sued his employer under Section
1983 claiming retaliation for speaking out against inappropriate
behavior and falsifying of reports by other troopers, because the
court "cannot say that there is no relevant analogue to speech by
citizens who are not government employees."

To state a claim by a public employee for First Amendment
retaliation, an employee must demonstrate that (1) the employee's
speech was protected and (2) that the employee's speech was a
motivating factor in the alleged retaliatory action.  Green v.
Phila. Housing Auth., 105 F.3d 882, 885 (3d Cir. 1997).  The
first question is a question of law, the second a question of
fact.  Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir.
2006).  The First Amendment protects a public employee's
statements when "(1) the employee spoke as a citizen; (2) the
statement involved a matter of public concern; and (3) his
employer did not have 'an adequate justification for treating him
differently from any other member of the general public' as a
result of the statement."  Muzslay v. City of Ocean City, 2007
U.S. App. LEXIS 7311, *7 (3d Cir. 2007)(quoting Hill, 455 F.3d at
241-42).  The First Amendment, however, does not protect

14

employees from discipline based on speech made pursuant to their

official job duties.  Garcetti, 126 S. Ct. at 1958.  This is

because a public employee does not speak "as a citizen" when

making a statement "pursuant to official duties."  Id. at 1960.

In Garcetti, the Supreme Court considered whether an

internal memo from a deputy district attorney to his supervisor

criticizing an affidavit the police used to obtain a critical

search warrant was protected speech under the First Amendment.

Id. at 1955-57.  Claiming that he was later retaliated against by

his employer for speaking out, the deputy district attorney filed

an action under 42 U.S.C. § 1983 asserting violations of the

First and Fourteenth Amendments.  Id. at 1956.  The Court held

that the proper inquiry is first whether the employee spoke as a

citizen on a matter of public concern.  Id. at 1958-59.  If the

answer is no, the employee has no First Amendment cause of action

based on the employer's reaction to the speech because the First

Amendment does not prohibit managerial discipline based on an

employee's expressions made pursuant to official

responsibilities.  Id. at 1958.  The Court held:

> The controlling factor in [plaintiff's] case is that
> his expressions were made pursuant to his duties as a
> calendar deputy.  That consideration -- the fact that
> [plaintiff] spoke as a prosecutor fulfilling a
> responsibility to advise his supervisor about how best
> to proceed with a pending case--distinguishes
> [plaintiff's] case from those in which the First
> Amendment provides protection against discipline. We
> hold that when public employees make statements
> pursuant to their official duties, the employees are

> not speaking as citizens for First Amendment purposes,
> and the Constitution does not insulate their
> communications from employer discipline.

Garcetti, 126 S. Ct. at 1959-60.  The Court concluded that the

plaintiff's First Amendment claim failed because "[w]hen he went

to work and performed the tasks he was paid to perform, [he]

acted as a government employee" as opposed to a citizen for First

Amendment purposes.  Id. at 1960.

A number of courts have further articulated the standards

established in Garcetti in the context of speech made by police

officers or corrections personnel.  Specifically, in Bland v.

Winant, 2007 U.S. Dist. LEXIS 31094, *13 (D.N.J. Apr. 27, 2007),

the district court held that a police officer's contacting of the

county prosecutor's office regarding a DWI charge was not

protected speech under the First Amendment because such actions

were "within the scope of [the officer's] employment

responsibilities as a police officer."  In Freitag v. Ayers, 463

F.3d 838, 854-55 (9th Cir. 2006), the Ninth Circuit Court of

Appeals held that a corrections officer's completing of internal

forms and incident report, which she was required to do as part

of her official duties as a corrections officer, were not

protected under the First Amendment because she completed these

forms not in her capacity as a citizen, but in her capacity as a

corrections officer.

16

The critical threshold inquiry here is whether Burns engaged in the relevant speech "pursuant to his official duties." <u>Garcetti</u>, 126 S. Ct. at 1960.  Applying the standard articulated in <u>Garcetti</u> to the instant case, the Court holds that Burns made statements to an internal affairs investigator in his capacity as a police officer and pursuant to his official duties and <u>not</u> as a citizen.  Indeed, Burns spoke to investigators as part of an official internal affairs investigation into Fanfarillo's comments made during the February 2003 incident.  As part of the investigation, Burns was one of numerous officers questioned about the February 2003 incident.  (Pl.'s St. of Material Facts ¶ 5 - 10.)  In fact, in his deposition, Burns concedes that he "felt that he had an obligation under the Rules and Regulations of the Glassboro Police Department to report the incident to his sergeant."  (Compl. ¶ 11; Burns Dep. Tr. at 13-14.) Indeed, the police department's "Sexual Harassment Policy" places the affirmative obligation on each employee to "assist[] in the prevention of harassment through the following acts . . . [r]eporting acts of harassment to a supervisor . . . [with] failure to take action to stop known harassment [constituting] be grounds for discipline."  (Def.'s Statement of Material Fact ¶¶ 14, 16, 17.)  From a practical perspective, then, Burns' comments made to the internal affairs investigators were made pursuant to his official duties as a police officer in the Glassboro Police Department and not as a private citizen.  Thus, he has failed to

17

make out the first element necessary to show that his speech was protected by the First Amendment, namely that a public employee speak in his capacity as a citizen.

The Court is not persuaded by Burns' argument that, because Burns' complaint about Fanfarillo's comments could have been made by a citizen who observed the February 2003 incident, the speech is protected. Burns did not simply report the fact that an officer made derogatory comments. Rather, Burns gave statements to internal affairs investigators as part of an official internal affairs investigation regarding station-house conduct towards a fellow officer. The Court does not see a relevant analogue, as a citizen is unlikely to participate in such an internal affairs investigation. Moreover, the Court will not follow the holding by the district court in <u>Skrutski</u>, in which the court held <u>Garcetti</u> inapplicable because that Court could not say that there was "no relevant analogue to speech by citizens who are not government employees" when a state trooper informed his superior officer that another trooper asked him to falsify an official report and criticized the handling of a criminal investigation. <u>Skrutski</u> is factually distinguishable from the present case. <u>See</u> 2006 U.S. Dist. LEXIS 66024 at 28-29. The actions taken by Burns (providing a detailed statement to internal affairs investigators about the February 2003 incident) are much more similar to the actions taken by the plaintiffs in <u>Bland</u> (contacting a county prosecutor regarding DWI charge) and <u>Freitag</u> (completing inmate

18

incident reports) than the actions taken by the plaintiff in
Skrutski (criticizing a fellow officer), because Burns and the
plaintiffs in Bland and Freitag were compelled, as part of their
official job duties to engage in the speech they later claimed
was protected by the First Amendment.  In contrast, the Skrutski
court found the plaintiff was not compelled to criticize a fellow
officer as part of his job duties.  See Skrutski, 2006 U.S. Dist.
LEXIS at *26 ("[I]t is clear that filing the original complaint
was not pursuant to Skrutski's official duties.") Therefore,
Burns' speech is not protected by the First Amendment and
Defendants are entitled to summary judgment on Count One of the
Complaint.

**B.   Violation of the New Jersey Law Against Discrimination
       (Count Two)**

In Count Two of his Complaint, Burns claims that Defendants
violated the New Jersey Law Against Discrimination ("NJLAD").
(Compl. ¶¶ 19-23.)  Specifically, Burns claims that he reported
Fanfarillo's sexually harassing conduct to the police
department's internal affairs investigators and that shortly
after, Fanfarillo retaliated against him.  (Id. at  ¶¶ 21-22.)
Burns also alleges that Fanfarillo's retaliation was in response
to Burns' reporting of Fanfarillo's inappropriate conduct and
that Burns was damaged by the retaliation.  (Id. at ¶ 23.)

To establish a prima facie case of retaliation under the
NJLAD, a plaintiff must demonstrate: (1) that the employee

engaged in a protected employee activity; (2) that the employer took an adverse employment action after, or contemporaneous with, the employee's protected activity; and (3) that a causal link exists between the employee's protected activity and the employer's adverse action.  Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001); Cortes v. Univ. Med. and Dentistry of N.J., 391 F. Supp. 2d 298 (D.N.J. 2005). Upon establishing a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for its actions.  See McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).  If the defendant is able to successfully articulate such a reason, the burden shifts back to the plaintiff to show that the defendant's non-discriminatory reason for the action was pretextual, and that the real reason for the action was unlawful discrimination.  Id. at 802-04.

In support of their motion for summary judgment directed at Burns' NJLAD claims, Defendants raise three arguments.  First, Defendants contend that Burns has failed to make a prima facie case of retaliation because the allegedly retaliatory acts do not rise to the level of an "adverse employment action."  Second, Defendants argue that Burns cannot establish a causal link between Burns' reporting to the internal affairs investigators and the adverse employment action taken by Fanfarillo.  Finally, Defendants argue that, even if Burns satisfies its burden of establishing a prima facie case of retaliation, Defendant have

20

articulated legitimate, non-discriminatory reasons for taking the allegedly adverse employment actions.  The Court will address each of Defendants' arguments, but finding none persuasive and finding that genuine issues of material fact exist, will deny Defendants' motion for summary judgment as to Burns' NJLAD claim.

### 1.   Adverse Employment Action

First, Defendants argue that Burns has not made out a <u>prima facie</u> case of retaliation because the alleged retaliatory acts do not rise to the level of an "adverse employment action." According to Defendants, "adverse employment action" must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment . . . ." <u>Hargrave v. County of Atlantic</u>, 262 F. Supp. 2d 393, 427 (D.N.J. 2003). According to Defendants, none of the alleged retaliatory acts -- that include interfering with the promotional process, launching a failed investigation into Burns, discontinuing his outside detail work, removing him from a list of officers who train new officers, and failing to speak with him -- rises to the level of "adverse employment actions."  Burns counters by arguing that he was subject to adverse job actions under NJLAD, and that under <u>Green v. Jersey City Bd. of Educ.</u>, 177 N.J. 434, 448 (2003), many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct may constitute an adverse employment action.  According to Burns,

Burns has set forth a series of actions taken by Fanfarillo against him that, when viewed in their totality, constitute an adverse employment action.

Courts in this jurisdiction have held that "[i]n order to constitute adverse employment action for purposes of the [NJLAD], retaliatory conduct must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate, or classify the plaintiff in a way which would tend to deprive [him or] her of employment opportunities or otherwise affect [his or] her status as an employee." Marrero v. Camden County Bd. of Social Servs., 164 F. Supp.2d 455, 473 (D.N.J. 2001).  Indeed, a plaintiff must demonstrate that "alleged retaliatory actions were 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Proctor v. ARMDS, Inc., 2006 U.S. Dist. LEXIS 85333, *22 (D.N.J. 2006)(quoting Moore v. City of Philadelphia, 461 F.3d 331, 346 (3d Cir. 2006)).  In determining whether an action is an adverse employment action in a retaliation case, the Court must consider factors such as "the employee's loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments and toleration of harassment by employees." Mancini v. Township of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002).

Plaintiff alleges that the New Jersey Supreme Court's holding in the CEPA case of Green v. Jersey City Bd. of Educ.,

177 N.J. 434 (2003) should apply alike to this NJLAD claim.  The Green Court held that an "adverse employment action" under CEPA "can include many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct."  Id. at 448.  However, the Court need not aggregate the retaliatory actions Burns alleges were taken by Fanfarillo to find that Fanfarillo's actions rise to the level of an adverse employment action.  Thus, the Court need not consider whether the holding in Green applies equally to a NJLAD claim.  Rather, a number of the retaliatory actions allegedly taken by Fanfarillo, individually, are serious enough so that "a reasonable employee would have found the challenged action materially adverse." Proctor, 2006 U.S. Dist. LEXIS 85333, at *22.  Indeed, Fanfarillo's retaliatory actions such as interfering with Burns' ability to get promoted and curtailing his ability to earn income through overtime and outside detail, go to heart of Burns' employment.  To be sure, such actions fundamentally altered Burns' compensation (in overtime income earned) and his conditions of his employment (Burns' removal from the canine unit) and deprived him of future employment opportunities (such as the opportunity for promotion and advancement).  See Hargrave, 262 F. Supp. 2d at 427; Mancini, 349 N.J. Super. at 566.[7]  A

_____

[7]  It is well-settled that the elements of an NJLAD claim are interpreted by analogy to a Title VII claim for employment

reasonable jury could believe Burns that these retaliatory
actions occurred.  Individually, such actions, if shown, would
materially and adversely alter his employment with the Glassboro
Police Department.  Consequently, the Court determines that Burns
has presented a prima facie case that Defendants took an adverse
employment action against Burns.

### 2.   Causation

Next, Defendants argue that Burns cannot demonstrate a
causal link between the protected activity (his speaking to the
police department's internal affairs unit about the February 2003
incident) and an adverse employment decision (the numerous
actions taken against Burns by Fanfarillo).  (Def.'s Br. at 7.)
According to Defendants, Burns cannot demonstrate a causal link
because Burns has not presented any evidence that Fanfarillo knew
that Burns made statements to the internal affairs investigators
related to the February 18 incident.  Alternatively, Defendants
contend that it is "undisputed" that Fanfarillo never saw the

---

discrimination or retaliation under federal law.  Grigoletti v.
Ortho Pharmaceutical Corp., 118 N.J. 89, 97 (1990).  Accordingly,
the Supreme Court's recent definition of adverse job action under
Title VII is instructive in Burlington Northern & Santa Fe Ry.
Co. v. White, ___ U.S. ___, 126 S. Ct. 2405, 2409 (2006).  The
Supreme Court noted: "Interpreting the anti-retaliation provision
to provide broad protection from retaliation helps assure the
cooperation upon which accomplishment of the [Civil Rights Act's]
primary objective depends."  Id. at 2414.  Likewise, under NJLAD,
the remedial intent of the Act must animate the construction of
its terms to assure protection from reprisals against those who
"filed a complaint, testified or assisted in any proceeding under
the Act," N.J. Stat. Ann. 10:5-12(d). _

internal affairs file related to the incident until he was
deposed in this case, nor did he even have access to his internal
affairs file because it was sealed and locked in a cabinet by the
Borough Administrator.  Defendants argue further that, even if
Fanfarillo saw the file, he would be unable to determine that it
was Burns who gave internal affairs investigators a detailed
account of the February 2003 incident because Burns is not named
as the complainant and the file only identified Burns as one of
seven department employees who were present in the break room
during the February 2003 incident.

Burns contends that summary judgment is inappropriate
because questions of fact exists surrounding whether Fanfarillo
had access to his internal affairs file or knew of Burns'
involvement in his investigation.  Burns points to the testimony
of Captain Franklin Brown in which Captain Brown recalled
transferring all open internal affairs files (including
Fanfarillo's file) to Fanfarillo's office.  Burns also points out
that it is likely that Defendants are incorrect that the only
copies of the files were locked in the Borough Administrator's
office as Officer Layton explained that he was asked to give the
original file to the Borough Administrator but kept a copy of
Fanfarillo's file in his own internal affairs file and that
Fanfarillo eventually took custody of this file.

Here, summary judgment is not appropriate.  There is a
genuine issue of material fact as to whether Fanfarillo had

access to his internal affairs file or otherwise learned of
Burns' cooperation with the investigation, before taking action
against Burns.  A reasonable jury could (1) disbelieve
Fanfarillo's testimony that he never saw the file and did not
have access to it because it was locked away by the Borough
Administrator and (2) believe the testimony of Officer Layton and
Captain Brown that Fanfarillo took possession of a copy of his
internal affairs file.  A jury must hear the testimony of
Fanfarillo, Officer Layton and Captain Brown in order to assess
their credibility and determine the factual issues and the
relevant chronology of circumstances and events.  At this point
in the litigation, Burns need not prove that Fanfarillo actually
read the file and, giving Burns the benefit of all favorable
inferences, a reasonable fact finder could find that Fanfarillo
properly deduced that Burns was the officer that made the
detailed statements to the internal affairs investigators.

### 3. Non-retaliatory Reasons for the Alleged Adverse Actions

Finally, Defendants argue that, even if the Court concludes
that Burns established a prima facie case of retaliation, Burns'
NJLAD claim still fails because Defendants have presented
legitimate, non-retaliatory reasons for the alleged adverse
actions Fanfarillo took against Burns and Burns cannot
demonstrate that the non-discriminatory reasons for the action

was pretextual.  According to Defendants, each alleged act of
retaliation has a legitimate reason behind it.  For example:

- The abolishment of Burns' outside detail in
  Philadelphia was part of a larger policy enacted by the
  public safety committee to abolish all out-of-
  jurisdiction extra detail because, according to the
  Borough CFO, the administrative costs the Borough
  received did not cover the Borough's total costs.  This
  decision was made in meetings on November 13, 2003 and
  January 23, 2004.

- Fanfarillo "made a reasonable mistake" in denying Burns
  and another officer oral interviews as part of the
  promotional process after incorrectly concluding that a
  candidate who failed the written portion of the
  promotion test was not entitled to an interview.

- Fanfarillo's launching of an investigation into Burns
  (the allegations were eventually found unsubstantiated)
  was actually instigated by a citizen complaint made by
  Randi Woerner.  Woerner claims that she overheard Burns
  state in June 2004 that it was too hot for Burns to
  perform an investigation of a complaint concerning
  suspicious activity.

- Burns' refusal to take part in the promotions process
  was related to the high cost of a review class and his
  history of under performance on the written test rather
  than being intimidated by Fanfarillo.

- The specialized shotgun that was taken from Burns is a
  "Class 3" weapon used for breaching and/or entering
  structures and was obtained by the police department to
  augment the warrant service that was part of the
  detective division (and not for use in a normal patrol
  car).

Burns argues that Defendants' proffered reasons for the
actions taken against Burns are pretextual.  This Court holds
that numerous issues of material fact exist regarding whether
Fanfarillo had a legitimate reason for taking the actions Burns
claims were retaliatory and for each proffered reason, Burns has

27

adduced evidence of pretext arising from the implausibility or illogic of the reasons, which a reasonable jury could so find. Specifically, with respect to eliminating Burns' ability to work outside detail in Philadelphia, there is a genuine issue of fact regarding whether Fanfarillo allowed other officers to continue to work side detail outside of the Borough at the fifteen percent (15%) administrative fee and whether the only officers impacted by Fanfarillo's decision were Burns and Butch Moore.

Second, Burns raises genuine issues of fact regarding whether Fanfarillo intentionally interfered with Burns' attempts to be promoted.  Factual issues surround whether Fanfarillo actually made a "reasonable mistake" when he refused to allow Burns to participate in the interview portion of the promotional process in the Summer and Fall of 2004.  In addition, Burns raises a genuine issue of fact with respect to Defendants' purported reasons for launching an investigation into Burns during his interview process.  Specifically, a fact-finder must determine whether to believe Fanfarillo's statement that the investigation was launched based on a citizen's complaint or whether it was launched, as Burns has advanced through witness testimony, because Fanfarillo "want[ed] Burns' ass on this one." Finally, Burns raised a genuine issue of fact regarding whether Fanfarillo's reasons for taking away his specialty shotgun (i.e., that it was not appropriate for use by a patrolman) was

pretextual as Burns was one of only two officers issued the shotgun and trained in its use.

## IV. **CONCLUSION**

For the reasons discussed above, the Court will grant in part and deny in part Defendants' motion for summary judgment. The Court will grant Defendants' motion with respect to Burns' First Amendment claim and dismiss this claim.  The Court finds that the detailed statement of the comments Fanfarillo made during the February 2003 incident were not protected under the First Amendment as Burns made these statements as part of his official duties as a Glassboro Police Officer.  With respect to Burns' claim under NJLAD, the Court will deny Defendants' motion for summary judgment finding (1) that Fanfarillo's retaliatory acts rise to the level of an adverse employment action under NJLAD and (2) that genuine issues of material fact exist as to whether Fanfarillo had access to his internal affairs file (and could deduce that Burns reported Fanfarillo's harassing conduct) and whether Fanfarillo's stated reasons for the allegedly retaliatory acts were pretextual.

The accompanying Order will be entered.


**June 11, 2007**                                        **s/ Jerome B. Simandle**
Date                                                     JEROME B. SIMANDLE
                                                         United States District Judge